231 P.3d 808 (2010)
2010 UT App 71
STATE of Utah, in the interest of R.A., a person under eighteen years of age.
R.A., Appellant,
v.
State of Utah, Appellee.
No. 20090017-CA.
Court of Appeals of Utah.
March 25, 2010.
*810 William L. Schultz, Moab, for Appellant.
Mark L. Shurtleff and Kenneth A. Bronston, Salt Lake City, for Appellee.
Before Judges DAVIS, McHUGH, and ORME.

MEMORANDUM DECISION
McHUGH, Associate Presiding Judge:
¶ 1 R.A. appeals his convictions for various drug-related charges.[1] R.A. claims that the trial court erred in denying his motion to suppress the evidence because the evidence was obtained in violation of his constitutional rights. We affirm.
¶ 2 R.A. argues that the State violated his privilege against self-incrimination, see U.S. Const. amend. V,[2] when the police officer investigating the incident questioned R.A. without first giving him the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In addition, R.A. contends that his Fourth Amendment rights, see U.S. Const. amend. IV,[3] were violated when the police officer conducted a warrantless search of R.A.'s home because R.A.'s consent to the search was not voluntary. "In an appeal from a trial court's denial of a motion to suppress evidence, we review the trial court's factual findings for clear error[,] and we review its conclusions of law for correctness." State v. Perkins, 2009 UT App 390, ¶ 8, 222 P.3d 1198 (alteration in original) (internal quotation marks omitted).
¶ 3 At oral argument, R.A.'s attorney conceded that if R.A.'s consent to the search was voluntary, R.A. was not prejudiced by the admission of his statements allegedly obtained in violation of Miranda. Accordingly, we first address R.A.'s argument that the illegal drugs and other materials obtained during the search of the home should be suppressed because his consent was not voluntary.
¶ 4 The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures absent a warrant supported by probable cause. See U.S. Const. amend. IV. "Warrantless searches are per se unconstitutional under the Fourth Amendment unless conducted pursuant to a recognized exception to the warrant requirement. One such exception includes searches conducted pursuant to consent." State v. Bisner, 2001 UT 99, ¶ 43, 37 P.3d 1073 (citations omitted). Whether a defendant actually gave his consent to a search is a question of fact, but whether that consent was voluntary is a legal conclusion that we review for correctness. See State v. *811 Hansen, 2002 UT 125, ¶ 51, 63 P.3d 650. We grant no deference to the trial court's application of the law to the facts and review the decision regarding voluntariness for correctness. See Perkins, 2009 UT App 390, ¶ 8, 222 P.3d 1198.
¶ 5 The basic facts surrounding the search are as follows. In August 2008, a juvenile became ill after ingesting two psilocybin mushrooms and marijuana. Moab City Police Officer Shawn Hansen interviewed the juvenile, who refused to provide the name of the supplier, but did say that he was given the drugs by "a person who works with him at Pizza Hut." Upon examination of the juvenile's cell phone, Officer Hansen saw several recent calls from "Rocky" and wrote down the phone number. Other individuals questioned by Officer Hansen identified a Rocky who worked at Pizza Hut and sold marijuana and mushrooms. The individuals also told Officer Hansen what kind of car Rocky drove and where he lived.
¶ 6 Officer Hansen drove to the address the individuals had identified as Rocky's, which turned out to be R.A.'s home. Upon arrival at the home, Officer Hansen knocked on the front door, but there was no answer. He then peered through the front window but did not see anyone inside. Finding nobody home, Officer Hansen called the telephone number for Rocky.[4] The number was for R.A.'s cell phone. Officer Hansen reached R.A. at work, identified himself, and indicated that he was investigating the circumstance concerning the juvenile who ingested the mushrooms and marijuana. Officer Hansen told R.A. that he needed the drugs to complete his report and that he would "not take [R.A.] to juvenile detention" if R.A. came home and gave the drugs to Officer Hansen. After R.A. agreed to leave work and come home, Officer Hansen asked R.A. to clarify whether he was going to turn over the items or if Officer Hansen should "try for a warrant." R.A. responded that "he didn't want [Officer Hansen] to try for a warrant."
¶ 7 When R.A. arrived, Officer Hansen briefly questioned him in front of the home. Officer Hansen testified that R.A. probably felt "a little bit scared or possibly intimidated" during the interview. A neighbor from across the street also testified that R.A. looked "distressed" during the conversation. Shortly after R.A. arrived, Officer Hansen asked if he could search R.A.'s car. R.A. does not dispute that he agreed to that search. When the search of the car yielded nothing, R.A. and Officer Hansen walked up the front steps of the home, and R.A. led Officer Hansen inside the house and upstairs to his bedroom.[5] Once there, R.A. retrieved several baggies containing illegal drugs, as well as other drug paraphernalia and an envelope that R.A. admitted contained "drug money," and gave the items to Officer Hansen.
¶ 8 R.A. argues that these facts demonstrate that his consent to the search was the product of coercion.[6] "[T]o be valid, consent must have been given voluntarily and not have been obtained by police exploitation of ... prior illegality,"[7]Bisner, 2001 UT 99, *812 ¶ 43, 37 P.3d 1073 (omission in original) (internal quotation marks omitted), or "as `the product of duress or coercion, express or implied,'" id. ¶ 47 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). The burden is on the State to show, by a preponderance of the evidence, that consent was voluntarily given when viewed in light of the totality of the circumstances. See State v. Tripp, 2010 UT 9, ¶ 36, 650 Utah Adv. Rep. 18, 227 P.3d 1251; see also Hansen, 2002 UT 125, ¶ 56, 63 P.3d 650. "The totality of the circumstances requires careful scrutiny of `the details of the [search and] detention, and the characteristics of the defendant.' And `[t]he totality of the circumstances must show consent was given without duress or coercion.'" Tripp, 2010 UT 9, ¶ 37, 227 P.3d 1251 (quoting Hansen, 2002 UT 125, ¶ 56, 63 P.3d 650). "In other words, a person's will cannot be overborne, nor may `his capacity for self-determination [be] critically impaired.'" Hansen, 2002 UT 125, ¶ 57, 63 P.3d 650 (alteration in original) (quoting Schneckloth, 412 U.S. at 225, 93 S.Ct. 2041).
¶ 9 In determining whether consent was voluntary, courts are guided by the following factors (the Whittenback factors) which may establish that duress or coercion are lacking: "`1) the absence of a claim of authority to search by the officers; 2) the absence of an exhibition of force by the officers; 3) a mere request to search; 4) cooperation by the [defendant]; and 5) the absence of deception or trick on the part of the officer.'" State v. Hansen, 2002 UT 125, ¶ 57, 63 P.3d 650 (quoting State v. Whittenback, 621 P.2d 103, 106 (Utah 1980)). Courts may also consider other factors, such as "`evidence of [the defendant's] minimal schooling, low intelligence, and the lack of any effective warnings [about] his rights.'" Id. (second alteration in original) (quoting Schneckloth, 412 U.S. at 248, 93 S.Ct. 2041).
¶ 10 In State v. Harmon, 910 P.2d 1196 (Utah 1995), the Utah Supreme Court applied the Whittenback factors to determine whether a defendant's consent was voluntary where it came shortly after the defendant was arrested for a traffic violation. See id. at 1198-99, 1206-08. There, a police officer went to the defendant's home to question her after receiving a tip that she was selling illegal narcotics. See id. at 1198. After the defendant refused to consent to a search of the home, the officer stated that "he `could come back at a later time with a [search] warrant,' which, he warned, was an `unpleasant experience.'" Id. (alteration in original). The defendant again refused to consent and left in her car. See id. The officer then ran a check on the defendant's driver license and, finding that it was suspended, followed the defendant, pulled her over, and placed her under arrest. See id. After putting the defendant in his marked patrol car, the officer "told [the defendant] that he knew she had drugs in her home, that he would have to get a warrant, and that they would `tear [the defendant's] house apart,'" yet he never said that he would actually be able to obtain a warrant. See id. The defendant then consented to a search of the home, telling the officer that she initially refused because she had previously sold narcotics and some drug paraphernalia remained inside the home. See id. The officer "did not promise [the defendant] any benefit for permitting a search of her home and told her that she would probably go to jail" even if she consented to the search. Id. Upon arrival at the home, the defendant assisted the officers by taking her dog into the backyard and "pulling various items of drug paraphernalia and illegal drugs out from underneath a sofa in the living room." Id. at 1198-99.
¶ 11 Applying the Whittenback factors, the supreme court concluded that, although some of the officer's statements were "troubling," id. at 1208, the defendant's consent was voluntary because (1) the officer did not make a false claim of authority but instead communicated that, absent the defendant's consent, he would need to obtain a warrant before *813 searching the home;[8] (2) the officer did not use or threaten any force to obtain consent; (3) the officer made a request rather than a demand to search the home; (4) the defendant assisted with the search; and (5) the officer's statement that he would have to get a warrant was an accurate statement and, therefore, was not deceptive or a trick to obtain the defendant's consent. See id. at 1207-08.
¶ 12 Applying the Whittenback factors to the facts of this case, we conclude that R.A.'s consent to the search was not the product of duress or coercion and, thus, was voluntarily given.[9] Because the questions of whether Officer Hansen claimed authority to search and whether he merely requested to search the home are closely related, we analyze the first and third Whittenback factors together. Cf. id. at 1206 (analyzing the first and fifth factors together).
¶ 13 When he asked R.A. to consent to the search, Officer Hansen did not claim he had a warrant or that he was certain he could obtain one, nor did he assert any authority to search if R.A. refused to consent. In their telephone conversation, Officer Hansen merely asked R.A. whether he was going to "come to the house and give [Officer Hansen] the items or if [Officer Hansen] should try for a warrant." Indeed, Officer Hansen accurately described his lack of authority to search the home in the absence of either a warrant or R.A.'s consent. See generally id. at 1207 (holding that an officer's statement "that `he would have to' get a warrant" in order to search the defendant's home if the defendant refused to consent "was accurate and not coercive," while a statement that "he `could come back' with a warrant, when in fact he knew he could not come back with a warrant absent more evidence, was deceptive").
¶ 14 As to the second factorwhether the officer exhibited any forcethere is nothing in the record to suggest that Officer Hansen used or exhibited force to obtain R.A.'s consent. To the contrary, Officer Hansen arrived alone, in plain clothes, and in an unmarked police car, without activating its lights or sirens. He never displayed his weapon or raised his voice, nor did he handcuff, physically detain, or threaten R.A. with arrest.
¶ 15 With respect to the fourth factor whether the resident cooperated with the searchthe evidence supports a conclusion that R.A. cooperated with Officer Hansen. After the initial conversation and the search of the car, R.A. and Officer Hansen walked up to the front door of the house, where "nothin[g] was really said. [R.A.] just kinda looked at [Officer Hansen]," then opened the door to the house and took Officer Hansen into his bedroom. Once inside, without being asked to do so by Officer Hansen, R.A. began "pulling the items out." Although he was initially "distressed" by his conversation with Officer Hansen, R.A. eventually became "cooperative" with him. See generally State v. Harmon, 910 P.2d 1196, 1199, 1208 (Utah 1995) (holding that defendant was "cooperative" with the search where, after overcoming her initial fear of the search, she "pull[ed] various items of drug paraphernalia and illegal drugs out from underneath a sofa").
¶ 16 Under the final Whittenback factor, we conclude that Officer Hansen did not use deception or trick to obtain R.A.'s consent. Officer Hansen did state that "he knew that [R.A.] had mushrooms and marijuana in [his] closet" and that he wanted to *814 retrieve them in order to "do a report for the charges on it and not take [R.A.] to juvenile detention," but Officer Hansen "did not promise [R.A.] any benefit for permitting a search of h[is] home,"[10]see id. at 1198-99. Officer Hansen also did not make any false claims that he would be able to obtain a warrant in the absence of R.A.'s consent. Thus, Officer Hansen's statement about the probable location of the drugs in R.A.'s room was not deceptive. See id. at 1206-07.
¶ 17 Finally, we turn to R.A.'s argument that the juvenile court erred by failing to consider R.A.'s age in assessing the voluntariness of R.A.'s consent.[11] Factors such as R.A.'s age may be relevant to the question of whether R.A. voluntarily consented to the search. Cf. State v. Hansen, 2002 UT 125, ¶ 56, 63 P.3d 650 (stating that a suspect's schooling, intelligence, "and the lack of any effective warnings [about] his rights" should be considered in determining whether consent was knowingly and voluntarily given (alteration in original) (internal quotation marks omitted)). Nevertheless, we are not convinced that the juvenile court failed to consider those factors here.
¶ 18 R.A.'s trial took place in juvenile court, which is exclusively charged with adjudicating matters involving juveniles, see Utah Code Ann. §§ 78A-6-102 to -103 (2008 & Supp.2009) (setting forth the purpose and jurisdiction of the juvenile courts). We have no doubt that the juvenile court judge was aware of R.A.'s age. R.A.'s birthdate, which showed that he was seventeen years old less than a year from attaining majority was noted in various minute entries, orders, and documents in the record that were signed by the juvenile court judge, including the order denying R.A.'s motion to suppress. The juvenile court further considered additional facts indicating that R.A. was sophisticated enough to consent to the search, despite his status as a juvenile. These facts include R.A.'s "substantial adjudication history," his previous drug charges, his participation in a "Youth Drug Court Program," and two prior occasions when R.A. was placed on probation. We are not persuaded that the juvenile court was unaware of R.A.'s juvenile status or that it erred in determining that R.A.'s consent was voluntary under "the totality of the circumstances," see Hansen, 2002 UT 125, ¶ 56, 63 P.3d 650.[12]
¶ 19 Based on the totality of the circumstances, we agree with the juvenile court that R.A.'s consent to the search was voluntary. Consequently, the juvenile court correctly denied R.A.'s motion to suppress. Because the illegal drugs and other evidence were properly admitted, R.A. admits that he can show no prejudice from the alleged violation of his Fifth Amendment protection against self-incrimination, see U.S. Const. amend. V; Miranda v. Arizona, 384 U.S. 436, 460-61, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We therefore do not address the issue of whether Officer Hansen should have advised R.A. of his Fifth Amendment rights.
¶ 20 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and GREGORY K. ORME, Judge.
NOTES
[1] Specifically, R.A. was convicted of possession of marijuana with the intent to distribute, a second degree felony, see Utah Code Ann. § 58-37-8(1) (2007); possession of drug paraphernalia in a drug-free zone, a class A misdemeanor, see id. § 58-37-8(4); id. § 58-37a-5(2); possession of a controlled substance in a drug-free Zone, a second degree felony, see id. § 58-37-8(2), (4); possession of less than one ounce of marijuana in a drug-free zone, a class A misdemeanor, see id.; and unlawful possession or consumption of alcohol by a minor, a class B misdemeanor, see Utah Code Ann. §§ 32A-12-104, -209 (Supp.2009).
[2] The Fifth Amendment "applies to the states through the Fourteenth Amendment." State v. Hales, 2007 UT 14, ¶ 42, 152 P.3d 321.
[3] "The Fourth Amendment is applicable to the states pursuant to the Fourteenth Amendment." State v. Perkins, 2009 UT App 390, ¶ 9 n. 4, 222 P.3d 1198.
[4] A neighbor across the street testified that Officer Hansen was at the home for at least one hour before calling R.A., during which time she saw him walk around the house, peer through the windows, walk into the backyard, and try to open the front door. The juvenile court did not make any findings concerning this portion of the witness's testimony, but the court did find that her testimony was credible on other issues.
[5] R.A. testified at the hearing on the motion to suppress that Officer Hansen asked him if he could search the house "[p]robably ... three times," and that each time, R.A. refused to consent. However, the juvenile court expressly found that R.A.'s testimony was "not credible." Due to its advantaged position to assess the credibility of witnesses, we defer to the trial court. See State v. Pena, 869 P.2d 932, 935-36 (Utah 1994).
[6] R.A. also argues that Officer Hansen's actions before R.A. arrived, such as trying the door to see if it was unlocked, peering in the windows, and walking into the backyard also indicate that R.A.'s consent was coerced. Those actions are not relevant to our analysis here because R.A. was unaware of Officer Hansen's prior actions and, consequently, they could not have affected the voluntariness of R.A.'s consent.
[7] On appeal, R.A. does not argue that Officer Hansen exploited any prior illegality surrounding the statements allegedly obtained illegally in violation of R.A.'s rights under the Fifth Amendment and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Moreover, an exploitation analysis "is triggered only if the prior illegality is a violation of the Fourth Amendment," State v. Thurman, 846 P.2d 1256, 1262 (Utah 1993), but R.A.'s claim that Miranda warnings were required pertains to his Fifth Amendment rights. Accordingly, we do not address the exploitation issue.
[8] The supreme court concluded that the officer's statement that he could come back with a warrant was "deceptive" because it "implie[d] full confidence that a warrant [would] issue." State v. Harmon, 910 P.2d 1196, 1206-07 (Utah 1995). However, based on the defendant's subsequent refusal to consent to the search, her driving away from the home, and the officer's correct statement that "`he would have to' get a warrant" to search the home, the supreme court ultimately determined that, taken as a whole, the officer's statements were "accurate and not coercive" and that the defendant "knew that [the officer] did not have a warrant and could not search absent her consent." Id. at 1207.
[9] R.A. notes the applicability of the Whittenback factors, but he primarily bases his argument on Officer Hansen's conduct prior to R.A.'s arrival at the home and on R.A.'s apparent anxiety before and during the search. As discussed above, Officer Hansen's conduct prior to R.A.'s arrival was unknown to R.A. and, therefore, is largely irrelevant to a determination of whether R.A.'s consent was voluntary.
[10] Officer Hansen assured R.A. that he would not be taken to detention, and he was not. We caution, however, that law enforcement officers should not be so reassuring about the lack of repercussions that they give a suspect the impression that there will be no repercussions whatsoever for consenting to a search or providing incriminating evidence and statements.
[11] Although R.A.'s argument on this issue is primarily in relation to his Miranda rights, he also maintains that the trial court failed to consider his age when viewing the motion to suppress as a whole.
[12] We do note the anomaly created by the statutory treatment of juveniles. While a seventeen year old cannot enter into an enforceable contract to make even an insubstantial purchase, see Utah Code Ann. § 15-2-2 (2009) (stating the legal capacity and liability of minors to enter contracts), that same juvenile is presumed competent to waive his constitutional rights, see Utah R. Juv. P. 26(e) ("A minor 14 years of age and older is presumed capable of intelligently comprehending and waiving the minor's right to counsel...."); id. R. 27A(a)(2) ("If the minor is 14 years of age or older, the minor is presumed capable of knowingly and voluntarily waiving the minor's [Fifth Amendment] rights without the benefit of having a parent, guardian, or legal custodian present during questioning.").