**2015 UT App 197**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
DONALD WILLIAM FRETHEIM,
Defendant and Appellant.

Memorandum Decision
No. 20131068-CA
Filed August 6, 2015

Fifth District Court, Cedar City Department
The Honorable G. Michael Westfall
No. 121500639

Matthew D. Carling, Attorney for Appellant

Sean D. Reyes and Marian Decker, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES JOHN A. PEARCE and KATE A. TOOMEY
concurred.

ORME, Judge:

¶1     Defendant Donald William Fretheim appeals his convictions for two counts of possession of a controlled substance, second degree felonies, and one count of possession of drug paraphernalia, a class A misdemeanor. We affirm.

¶2     In 2013, two narcotics officers knocked on Defendant's apartment door.[1] The officers explained to Defendant that they

---

1. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *State v. Nichols*, 2003 UT

(continued…)

had been investigating a drug problem across the street and that their investigation had led them to Defendant's apartment. The officers asked if they could come inside; Defendant consented and let them in. One of the officers instantly noticed a suspicious-looking crushed soda can on the floor. It had holes punched in the top and "burnt residue" inside. When asked, Defendant admitted that he used the can to smoke marijuana and that "there may be" other illegal items around the apartment. The officers asked for permission to search, which Defendant granted. During the search, the officers found marijuana, a marijuana pipe, methamphetamine, and "a small light bulb that had been used to ingest methamphetamine." The officers then advised Defendant of his *Miranda* rights. Defendant agreed to speak with the officers and admitted that all of the contraband belonged to him.

¶3     Before trial, Defendant moved to suppress the drug evidence on the grounds that the search of his apartment was unreasonable because "it was not supported by probable cause and exigent circumstances" and because it was "impossible to know" if his consent was voluntary given the brevity of the police report. The trial court denied Defendant's motion. Following a bench trial, the court convicted Defendant as charged. Defendant appeals.

¶4     Defendant first argues that the trial court erroneously denied his motion to suppress because (1) the officers lacked reasonable suspicion to ask for permission to enter or to search his apartment and (2) his consent was involuntary as "he [believed he] could not refuse entry or search" as a probationer. "In an appeal from a trial court's denial of a motion to suppress

---

(…continued)
App 287, ¶ 1 n.1, 76 P.3d 1173 (citation and internal quotation marks omitted).

evidence, we review the trial court's factual findings for clear error[,] and we review its conclusions of law for correctness." *State v. Perkins*, 2009 UT App 390, ¶ 8, 222 P.3d 1198 (alteration in original) (citation and internal quotation marks omitted). While it is far from clear that Defendant's suppression claim is preserved for appeal, we readily conclude that Defendant's Fourth Amendment rights were not violated.

¶5    The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. "Warrantless searches are per se unconstitutional under the Fourth Amendment unless conducted pursuant to a recognized exception to the warrant requirement. One such exception includes searches conducted pursuant to consent." *State v. Bisner*, 2001 UT 99, ¶ 43, 37 P.3d 1073 (internal citations omitted). "A consent is valid only if (1) the consent was given voluntarily, and (2) the consent was not obtained by police exploitation of [a] prior illegality." *State v. Tripp*, 2010 UT 9, ¶ 27, 227 P.3d 1251 (alteration in original) (citation and internal quotation marks omitted).

¶6    Defendant's contention that the officers lacked reasonable suspicion to ask for permission to enter or search his apartment is wide of the mark. The Fourth Amendment does not require police officers to have reasonable suspicion to conduct a so-called "knock-and-talk" investigation. "[A] police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do." *Florida v. Jardines*, 133 S. Ct. 1409, 1416 (2013) (citation and internal quotation marks omitted). *See also Kentucky v. King*, 131 S. Ct. 1849, 1862 (2011) ("[W]hether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak."). "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is

required." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (citation and internal quotation marks omitted). This is precisely the situation here, and Defendant was free to ignore the knock at his door and to decline the officers' requests for conversation and, eventually, entry.

¶7     Defendant's assertion of involuntariness is equally without merit. Defendant conceded at trial that he affirmatively expressed consent to the officers' entry and search of his apartment. Thus, his argument is that his consent was involuntary solely because "he [believed he] could not refuse entry or search" as a probationer. Whether consent is voluntarily given is determined by the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *Bisner*, 2001 UT 99, ¶¶ 45–46. "Consent is not voluntary if it is obtained as 'the product of duress or coercion, express or implied.'" *Bisner*, 2001 UT 99, ¶ 47 (quoting *Schneckloth*, 412 U.S. at 227) (listing factors indicating a lack of duress or coercion).

¶8     Defendant cites no authority to support the proposition that his subjective belief that he could not refuse consent single-handedly rendered his consent involuntary. Indeed, the United States Supreme Court has held that "[w]hile knowledge of the right to refuse consent is one factor to be taken into account," *Schneckloth*, 412 U.S. at 227, "knowledge of a right to refuse [consent] is not a prerequisite of a voluntary consent," *id.* at 234. *See also State v. Hansen*, 2002 UT 125, ¶ 54, 63 P.3d 650 (employing the holding from *Schneckloth*). Defendant has not argued that his consent was the product of duress or coercion, and there is no evidence that the officers exerted any pressure or force on Defendant in securing his consent to their entry into and search of his apartment. *See Bisner*, 2001 UT 99, ¶ 47. There is also no evidence that the officers claimed authority to enter or search his apartment based on his probation status or on any other basis. *See id.* Defendant's mistaken belief that he could not refuse consent, standing alone, is not enough to render his

consent involuntary.[2] We therefore conclude that the trial court did not err when it denied Defendant's motion to suppress.

¶9     Defendant next argues that his trial counsel was constitutionally ineffective because he did not move to suppress Defendant's pre-*Miranda* statements. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. To establish his claim of ineffective assistance of counsel, Defendant "must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶10     After Defendant was advised of his *Miranda* rights, he admitted that *all* of the drugs and paraphernalia found in the apartment belonged to him, and he has never contested the admissibility of his post-*Miranda* statements. Because Defendant's post-*Miranda* statements are more expansive and

---

2. Defendant, as a probationer, was required to permit his probation officers to enter and search, but that condition of his probation did not authorize others in law enforcement to enter without Defendant's consent or without a properly issued search warrant. *See State v. Burningham*, 2000 UT App 229, ¶ 9, 10 P.3d 355 ("[W]hile a probation officer's search need only be supported by reasonable suspicion, police officers are required to abide by the usual warrant and probable cause requirements of the Fourth Amendment."). Defendant's apparent confusion on this point is inconsequential, as the inquiry is an objective, not a subjective, one. *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?").

---

more incriminating than the information contained in his pre-*Miranda* statements, *see supra* ¶ 2, even if the pre-*Miranda* statements could have been successfully suppressed, Defendant cannot establish prejudice under *Strickland*. *See* 466 U.S. at 687.

¶11    Defendant also argues that trial counsel was ineffective "for failing to challenge the police report as being too vague or inconsistent in relation to the testimony given at the suppression hearing." The State contends that Defendant's claim fails because the police report is not in the record. We agree with the State. "[W]here, on direct appeal, [a] defendant raises a claim that trial counsel was ineffective . . . , [the] defendant bears the burden of assuring the record is adequate" for review. *State v. Litherland*, 2000 UT 76, ¶ 16, 12 P.3d 92. Because the police report is not in the record on appeal its contents remain unknown. "Where the record appears inadequate in any fashion, ambiguities or deficiencies resulting therefrom simply will be construed in favor of a finding that counsel performed effectively." *Id.* ¶ 17.

¶12    Affirmed.

_____