**STATE of Utah, Plaintiff and Appellee,**

v.

**Marshall Glen JONES, Defendant and Appellant.**

No. 890297.

Supreme Court of Utah.

Dec. 31, 1991.

R. Paul Van Dam, Sandra L. Sjogren, Salt Lake City, for State of Utah.

Joan C. Watt, Elizabeth Holbrook, Salt Lake City, for Jones.

STEWART, Justice:

Defendant Marshall Jones appeals his convictions on two counts of aggravated sexual assault, first degree felonies, in violation of Utah Code Ann. § 76–5–405 (1990), and one count of aggravated kidnapping, a first degree felony, in violation of Utah Code Ann. § 76–5–302 (1990). Jones was found guilty by a jury and was sentenced to serve three concurrent terms of five years to life in the state prison and fined $10,000. Jones filed this appeal contending that (1) the trial court erred in not giving a jury instruction on the elements of the crime of aggravated kidnapping; (2) a juror's and the prosecutor's lack of candor with respect to the jury selection process resulted in reversible error as to all convictions; and (3) Jones received ineffective assistance of counsel. We reverse the conviction for aggravated kidnapping because of the absence of an elements instruction and remand for a new trial on that charge, but affirm the convictions for aggravated sexual assault.

On October 20, 1988, at about 8:40 p.m., the victim was walking to her car, which was parked on the campus of the University of Utah, when she was approached by Jones, who asked her where a particular building was located. The victim testified that after she responded and began to unlock her car, Jones approached her with a screwdriver in his hand and directed her to get into the car and move to the passenger's side. She testified that Jones sat in the driver's seat and told her that he did not want to injure her, and she responded, "Don't do this." Jones ordered the victim to remove her sweatshirt and then took her keys and started to drive the car. He steered the car with one hand and held the screwdriver with his other hand, while the victim shifted gears. Jones told the victim that he had seen her before, but the victim did not recognize him.

Over a period of approximately 90 minutes, Jones drove the victim to various locations in the vicinity of the University of Utah campus. He stopped periodically and committed or attempted to commit various sexual acts with the victim. Eventually, Jones and the victim drove back to the University of Utah campus, and Jones parked the car. After he left and ran south, the victim drove to the parking services building where she worked. The police were notified, and eventually the victim was taken to Holy Cross Hospital.

A Fort Douglas security officer who had heard the dispatched description of the suspect realized that Jones fit the description

and notified the University of Utah police. Jones was apprehended the same evening at the University of Utah Marriott Library, where he worked as a janitor. He was taken to the University police station, where he gave a statement denying involvement in the incident and accounting for his time during the period when the incident occurred.

At trial, Jones conceded that he had engaged in sexual activities with the victim. However, he claimed that he had met the victim a few days before the incident and that she had recognized him on the evening of the 20th as they passed each other on the campus. Jones claimed that she invited him into her car and that the activities that followed were consensual. Jones admitted that he had a screwdriver with him on the evening of October 20, 1988, but claimed that he never threatened the victim with it. Jones theorized that the victim may have seen the screwdriver when he took a condom out of his pocket.

■ On appeal, Jones first asserts that the trial court did not give an instruction on the elements of aggravated kidnapping. The trial judge gave an information instruction stating the statutory definition of the crime, but did not give an elements instruction for aggravated kidnapping, even though elements instructions were given for each of the other counts. Jones did not object to the trial court's failure to give an elements instruction, nor did he proffer one himself. He raised the issue in the trial court for the first time on a post-verdict motion.

■ The State concedes that *State v. Laine*, 618 P.2d 33 (Utah 1980), controls this issue. The law in this state is that an information instruction is not a substitute for an elements instruction. The jury must be instructed with respect to all the legal elements that it must find to convict of the crime charged, and the absence of such an instruction is reversible error as a matter of law. *Laine*, 618 P.2d at 35. In *State v. Roberts*, 711 P.2d 235 (Utah 1985), we stated, "The general rule is that an accurate instruction upon the basic elements of an offense is essential. Failure to so instruct constitutes reversible error." *Id.* at 239 (Utah 1985) (citing *Laine*, 618 P.2d at 35). *See also State v. Harmon*, 712 P.2d 291, 292 (Utah 1986) (per curiam); *State v. Reedy*, 681 P.2d 1251, 1252 (Utah 1984). Thus, the failure to give this instruction can never be harmless error.

■ The complete absence of an elements instruction on a crime charged is an error we review to avoid manifest injustice. *See* Utah R.Crim.P. 19(c); *State v. Lesley*, 672 P.2d 79, 81 (Utah 1983); *Screws v. United States*, 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945); *State v. Cobo*, 90 Utah 89, 60 P.2d 952, 958–59 (1936); *People v. Wickersham*, 32 Cal.3d 307, 650 P.2d 311, 326–27, 185 Cal.Rptr. 436, 451–52 (1982) (en banc). *Cf. State v. Bell*, 563 P.2d 186, 187 (Utah 1977). It follows that even though Jones failed to object to the lack of an elements instruction when the instructions were given, the trial court's complete failure to give an elements instruction on aggravated kidnapping is clear error and requires reversal of the conviction and remand for a new trial on that charge.

Jones next contends that lack of candor by a juror and the prosecutor during the jury selection process tainted the entire process and requires reversal of all convictions. During voir dire, juror Pamela Young was asked if she knew anyone in the Salt Lake County Attorney's office. She indicated that she knew Scott Matheson, Jr., but no one else in the office. The prosecutor made no comment during the voir dire of Young. On the morning of the second day of trial, the prosecutor informed the court that he had learned that juror Young had waved to the prosecutor's secretary, who had waved back. The prosecutor offered the following explanation:

> Your Honor, I suppose that the State is the moving party in this. I received a telephone call during the recess. I returned the telephone call during the recess, I guess would be more accurate. Mr. Glen Iwasaki of my office informed me that his—that my secretary, Vicky Cowan, who had delivered some documents to me during the court this morn-

ing, had reported to him that one of the jurors had waved to her or in some other fashion indicated recognition of her. Apparently, my secretary had waved back in some fashion, as well, before leaving the courtroom.

That's all of the information I have. I believe that it was juror No. 4 that this pertains to, your Honor. That would be Ms. Young, I think. I don't know what significance to attach to this. But because it did take place between the juror and an employee of our office, while court was in session, I thought it best to bring it to the attention of [defense counsel] and the Court.

During a hearing which followed, testimony indicated that juror Young had known the prosecutor's secretary, Ms. Cowan, for approximately three or four years, but that they had only seen each other three or four times a year. It was also revealed during the hearing that juror Young had been a witness for the State in another prosecution within the preceding few months. Ms. Cowan testified that prior to the morning session, "[the prosecutor] mentioned that one of the jurors was a witness in a previous case. I asked who it was. I said I know her. That was it." This testimony demonstrates that the prosecutor knew that juror Young had been a witness when he disclosed the incident involving his secretary to the court. Furthermore, it belies his statement to the court that he had no further information with respect to the incident. Defense counsel suggested over the State's objection that juror Young be excused from service. The trial court accepted the suggestion, and the trial continued with seven jurors. Jones consented to a jury of seven members and specifically waived any claim of error due to the incident involving juror Young.

■ On appeal, Jones claims that juror Young's connections with the prosecutor's office demonstrate that she lied on voir dire when she stated that she knew only one person from the prosecutor's office and that the prosecutor's lack of candor in not revealing his knowledge of Young's con-

nections to his office tainted the entire jury selection process. Jones asserts that the juror's and prosecutor's lack of candor require reversal.

With respect to the juror's lack of candor, Jones overlooks the fact that he received the remedy that his trial counsel requested, i.e., that juror Young be excused and that the trial continue with seven jurors. Jones personally waived his right to an eight-person jury on the record and chose to proceed with seven jurors. In our view, that procedure, given the consent of defendant, was an adequate safeguard of his rights.

■ Jones's second assertion, that the prosecutor's lack of candor tainted the jury selection process, is entirely speculative. Jones did not question the integrity or candor of any other juror at trial and does not do so on appeal. More than mere speculation is required to support a charge of lack of jury impartiality on appeal. Cf. State v. Barella, 714 P.2d 287 (Utah 1986); State v. Nebeker, 657 P.2d 1359 (Utah 1983).

Clearly, the prosecutor should have disclosed his knowledge concerning juror Young's prior connection with the prosecutor's office as soon as he became aware of it. Nevertheless, since defendant received an otherwise fair trial and there is no evidence that the prosecutor's failure to disclose resulted in any prejudice, there is no basis for reversing the convictions.

Finally, Jones argues that he was denied effective assistance of counsel at his trial. He asserts that his trial counsel failed to protect his rights against self-incrimination and failed to confront the victim with her inconsistent statements relating to the defense of consent.

During deliberations, the jury was allowed to listen to a tape recording of an interview between a University police officer and Jones which occurred a few hours after the alleged incident. Jones's trial counsel had previously received a transcript of the tape. The transcript contained Jones's statements denying involvement with the victim. Originally, this transcript was to be presented to the jury, but

the prosecutor suggested that the tape itself might be helpful. Jones's counsel stated that although he had not listened to the tape, he would prefer to have the tape, rather than the transcript, presented.

■ On appeal, appellate counsel now asserts that Jones's trial counsel ineffectively represented him by allowing the tape rather than the transcript to be presented to the jury because the tape contained statements which were not in the transcript. No objection was made during trial to the introduction of either the tape or the transcript. It appears from the record that trial counsel attempted to make some form of objection to the evidence, but no actual objection appears in the record. Even if an objection had been made, however, it is doubtful that the tape or the transcript would have been withheld from the jury because they contained statements which were inconsistent with Jones's trial testimony.

In any event, the discrepancies noted by Jones between the tape and the transcript are inconsequential. He challenges only a few words on the tape which are different from the transcript. The substance of the tape and the transcript are the same. Jones does not claim that neither the tape nor the transcript should have gone to the jury, but rather that counsel was ineffective for not listening to the tape because of the discrepancies between the tape and the transcript. The argument is meritless.

■ Jones further asserts that trial counsel was ineffective for not investigating the circumstances surrounding the tape recording. Specifically, he asserts that the tape may have contained statements which were taken prior to the giving of *Miranda* warnings and statements which were taken after Jones invoked his right to counsel. However, Jones's own testimony refutes the first of these assertions. Jones testified that he was informed of the charges, the victim's name, and his *Miranda* rights before he gave the taped statement. Officers who were present during the taped interview testified that they read Jones his *Miranda* rights prior to taping the statement. As to Jones's assertion that the tape contained statements made after he invoked his right to counsel, nothing in the record supports that claim. Indeed, Jones himself states that the claim is only a "possibility." In short, this issue presents only the speculation that the tape was made before Jones was Mirandized or after he invoked his right to counsel. This is not sufficient to establish ineffective assistance of counsel.

■ Finally, Jones contends that his trial counsel was ineffective because of a failure to confront the victim with her inconsistent statements that related to the defense of consent. He contends that some statements contained in the police report which described the victim's account of the incident did not parallel her trial testimony. Furthermore, he asserts that trial counsel should have impeached the victim with her testimony from the preliminary hearing.

■ The inconsistencies that Jones claims exist between the preliminary hearing transcript and the trial transcript are not necessarily inconsistent and, at best, only minimally so. Also, the decision whether to cross-examine a witness on specific material is ordinarily a tactical decision. This Court will not review counsel's tactical decisions simply because another lawyer, e.g., appellate counsel, would have taken a different course. *See State v. Bullock*, 791 P.2d 155, 159 (Utah 1989), *cert. denied*, — U.S. —, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990); *State v. Buel*, 700 P.2d 701, 703 (Utah 1985). The mere fact that counsel's chosen strategy and tactics did not produce an acquittal does not compel the conclusion that counsel was ineffective.

We reverse the conviction for aggravated kidnapping due to the absence of an elements instruction and remand for a new trial on that charge. We affirm the convictions for aggravated sexual assault.

Reversed in part, affirmed in part, and remanded.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.