STATE of Utah, Plaintiff and Appellee,

v.

Donald Ward STEVENSON, Defendant and Appellant.

No. 920729–CA.

Court of Appeals of Utah.

Nov. 4, 1994.

---

James A. Valdez and Robert K. Heineman, Salt Lake City, for appellant.

Marian Decker, J. Kevin Murphy, and Jan Graham, Salt Lake City, for appellee.

Before BILLINGS, GREENWOOD and JACKSON.

GREENWOOD, Judge:

Defendant, Donald Ward Stevenson, appeals his conviction of rape, a first degree felony, in violation of Utah Code Ann. § 76–5–402 (1990). Defendant argues that his conviction should be overturned because: (1) the State committed prosecutorial misconduct; (2) defendant was not allowed to fully cross-examine or obtain the complete criminal record of a prosecution witness; and (3) the trial court gave the jury a defective instruction on the elements of rape. We affirm.

## BACKGROUND

On May 3, 1990, defendant went to the Voyager Lounge in West Valley City where he spoke with Lorie Southworth and invited her to a party at a West Valley location. Southworth agreed. However, upon arrival at the West Valley house, defendant and Southworth discovered that there was no

party. Defendant saw a friend at the house and agreed to drive him to his home in the Avenues. Defendant refused Southworth's numerous requests to return her to the Voyager Lounge before driving his friend home. While driving to the Avenues, defendant was stopped by a police officer. The officer subsequently asked Southworth to take control of the vehicle because defendant appeared to be intoxicated and could not produce a valid driver's license. Southworth drove defendant's friend home and then returned to the Voyager Lounge with defendant. Southworth had a drink at the lounge and then decided to drive home. However, upon leaving the lounge, Southworth observed a police officer near her car. Southworth decided not to risk driving while intoxicated so she accepted defendant's offer to give her a ride home.

Southworth testified at trial that she fell asleep in defendant's car and did not wake up until he high-centered the vehicle on a dirt hill. She further testified that defendant then locked the doors to the vehicle and ordered her to take her clothes off. Southworth stated that defendant threatened her with a knife and proceeded to rape her and attempted to sodomize her.

In contrast, defendant testified at trial that Southworth had consented to sexual intercourse. Further, defendant denied sodomizing Southworth or threatening her with a knife.

After the incident, defendant and Southworth went to a nearby trailer court to find help with the high-centered car. Defendant located one of his friends at the trailer court who agreed to help. When defendant moved out of hearing range, Southworth asked defendant's friend to call the police because she had been raped. Defendant's friend observed that Southworth appeared disheveled and was trembling. Defendant was later arrested and charged with aggravated sexual assault.

Defendant filed a motion to suppress or limit the testimony of Danny Kingsbury, defendant's cell-mate, on the ground that Kingsbury took statements from defendant as an agent of the State without informing defendant of his Miranda rights. The trial court denied defendant's motion. Kingsbury eventually testified that defendant had admitted to him that he had raped and sodomized Southworth and had threatened her with a knife.

On October 1, 1990, defendant requested a complete rap sheet on Kingsbury. On the first day of trial, defendant objected to the inadequacy of the rap sheet he had received because many of the convictions had been marked out as "expunged."

At trial, the prosecutor, while attempting to point out how the testimony of State witnesses conflicted with defendant's testimony, asked defendant if he believed that the police officer and another State witness were lying. Defendant answered, "I don't know." Defense counsel objected when the prosecutor began a second round of similar questioning about the veracity of the police officer's testimony. The trial court sustained counsel's objection.

During closing argument, the prosecutor made the following comment to the jury:

> You may look at Mr. Stevenson and think, "Well, he doesn't look like a rapist to me." Of course, I'm sure that's what all the innocent women and children—or women and girls thought when they got into Ted Bundy's car. He also did not look like a rapist.

Defense counsel objected to this comment and the trial court sustained the objection stating: "Members of the jury, you are to decide this case based solely on the evidence in this case. I'm sure that [the prosecutor] was just by example [sic]. You should disregard anything that she said in that regard."

Defendant was subsequently convicted by the jury of rape, a lesser included offense of aggravated sexual assault. The trial court sentenced defendant to five years to life concurrent with any other term, and imposed restitution.

After filing his notice of appeal, defendant moved this court for an order staying the briefing schedule until a certified copy of Danny Kingsbury's unredacted rap sheet was approved by the trial court. This court granted defendant's motion and the unre-

dacted rap sheet was obtained by the trial court and made a part of the record on appeal.[1]

## ISSUES ON APPEAL

There are three issues on appeal. First, did the prosecutor's comments and questions constitute prosecutorial misconduct? Second, did the trial court err in not allowing defendant to inform the jury of Danny Kingsbury's criminal record and in not requiring that defendant be provided with a clean copy of Kingsbury's criminal rap sheet? Third, was the trial court's jury instruction on rape defective?

## STANDARD OF REVIEW

■ In reviewing a claim for prosecutorial misconduct, this court will determine if the prosecutor's remarks called to the attention of jurors "matters they would not be justified in considering in reaching the verdict, and, if so, whether there is a reasonable likelihood that the misconduct so prejudiced the jury that there would have been a more favorable result absent the misconduct." *State v. Speer*, 750 P.2d 186, 190 (Utah 1988); *accord State v. Cummins*, 839 P.2d 848, 852 (Utah App.1992), *cert. denied*, 853 P.2d 897 (Utah 1993).

■ A trial court's decision regarding admissibility of evidence is generally accorded "a good deal of discretion" by an appellate court. *State v. Pena*, 869 P.2d 932, 938 (Utah 1994).

■ This court reviews a trial court's failure to give accurate elements in a jury instruction under a correctness standard. *State v. Jones*, 823 P.2d 1059, 1061 (Utah 1991). However, jury instructions to which a party failed to object will not be reviewed absent manifest injustice. Utah R.Crim.P. 19(c); *State v. Perdue*, 813 P.2d 1201, 1203 (Utah App.1991).

1. An unredacted rap sheet reveals all prior convictions including those that have been expunged.

## ANALYSIS

### Prosecutorial Misconduct

■ A prosecutor's questions or remarks may require reversal if: (1) the questions or remarks called to the jury's attention matters which they would not be justified in considering in reaching their verdict, and (2) under the circumstances, the jury was probably influenced by the remarks. *State v. Creviston*, 646 P.2d 750, 754 (Utah 1982). The second element of the prosecutorial misconduct test has also been stated as "whether the error was substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result." *State v. Cummins*, 839 P.2d 848, 852 (Utah App.1992) (quoting *State v. Peters*, 796 P.2d 708, 712 (Utah App.1990)). In reviewing the issue, the court must look to the totality of the evidence presented at trial. *Id.*

■ Defendant argues that the prosecutor's reference to Ted Bundy was error. We agree. In *State v. Troy*, 688 P.2d 483 (Utah 1984), the Utah Supreme Court reversed the defendant's conviction in part because the prosecutor compared the defendant to John Hinckley. *Id.* at 487. In *Troy*, the prosecutor stated in closing argument, "You know people do things for odd reasons. Hinckley is a classic example." *Id.* at 485. In this case, the prosecutor compared defendant's innocent look to that of a notorious murderer, Ted Bundy. Such a comparison was improper and erroneous.

We must next determine if the prosecutor's error was prejudicial to defendant. The trial court immediately sustained defendant's objection to the reference and emphatically instructed jurors not to consider the remark in their deliberations. Further, unlike the situation in *Troy*, our review of the record reveals ample evidence upon which the jury could have convicted defendant.[2] Southworth testified that defendant raped and at-

2. *See State v. Troy*, 688 P.2d 483, 486 (Utah 1984) (stating that " 'If proof of defendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial' ") (quoting *State v. Seeger*, 4 Or.App. 336, 479 P.2d 240 (1971)).

tempted to sodomize her.[3] Further, Southworth's testimony was bolstered by a number of independent witnesses. Therefore, although we find the prosecutor's reference to Ted Bundy erroneous and clearly improper, we cannot say that in its absence defendant would likely have received a "more favorable result."[4] *Cummins*, 839 P.2d at 852.

■ Defendant further asserts that in cross-examining defendant the prosecutor prejudiced the jury by asking him if the police officer was lying. In *State v. Emmett*, 839 P.2d 781 (Utah 1992), the Utah Supreme Court held that such questions are improper because they are argumentative and seek information outside the witness's competence. *Id.* at 787. In *Emmett*, the prosecutor asked defendant if he was claiming that his son, who had testified that defendant had sexually abused him, was lying. The court stated that the question was prejudicial because it "suggests to the jury that a witness is committing perjury even though there are other explanations for the inconsistency." *Id.* Further, it puts "defendant in the untenable position of commenting on the character and motivations of another witness who may appear sympathetic to the jury." *Id.*

In this case, it is clear that the prosecutor asked an improper question. However, in responding to the prosecutor's question, defendant stated that he didn't know if the officer was lying and that he could have misunderstood the officer. Defendant's answer alerted the jury that there could be conflicts in testimony based on reasons other than that one party was lying.[5] Thus, although the prosecutor's question was improper, it was not prejudicial to defendant.

### State Witness Danny Kingsbury

During cross-examination of the State's witness, Danny Kingsbury, defense counsel inquired whether Kingsbury had ever been in jail or convicted of a felony. The trial court sustained the State's objection to these questions. The trial court then stated that any questions regarding Kingsbury's prior criminal record would have to be admissible under Rule 609 of the Utah Rules of Evidence. Both the prosecutor and defense counsel agreed. The trial court then examined Kingsbury outside the presence of the jury, and released Kingsbury from further cross-examination about his prior criminal record finding no admissible convictions under Rule 609 and *State v. Banner*, 717 P.2d 1325, 1331–35 (Utah 1986) (the seminal case interpreting Rule 609).[6]

■ Defendant argues that the trial court erred when it refused to allow counsel to bring to the jury's attention the fact that Kingsbury had a criminal record. Defendant asserts that such information was admissible to impeach the witness under Rule 609 and to show bias and motive under Rules 404(b) and 608(c) of the Utah Rules of Evidence.[7]

However, our review of the record indicates that defense counsel asked Kingsbury about his criminal record in the context of Rule 609 only. Further, defense counsel agreed with the trial court that any evidence

---

**3.** *See State v. Archuleta*, 747 P.2d 1019, 1021 (Utah 1987) (holding testimony of rape victim, standing alone, can be sufficient to support a conviction.)

**4.** Although we find no prejudicial error in this instance, we reiterate our strong disapproval of the prosecutor's remarks. Such remarks are completely improper and *will* result in reversal if prejudice to defendant is shown.

**5.** *See State v. Casteneda–Perez*, 61 Wash.App. 354, 810 P.2d 74, 79–80 (1991) (stating that answers such as "I don't know" or "perhaps the witness was mistaken" in response to questions about the veracity of other witnesses made improper question harmless error); *State v. Flanagan*, 111 N.M. 93, 97, 801 P.2d 675, 679–80 (App.1990)

(holding that accused provided explanation for discrepancy suggested by prosecutor therefore no reversible error) *cert. denied*, 111 N.M. 77, 801 P.2d 659 (1990).

**6.** Defense counsel was allowed to question Kingsbury about his pending criminal trial and asked Kingsbury if he had made a deal with the prosecutor in exchange for his testimony. Kingsbury denied that he had struck a deal with prosecutors but admitted knowing that such deals were sometimes made.

**7.** Defendant asserts that because Kingsbury was the subject of a pending criminal trial and because of his extensive criminal record, he probably struck a deal with prosecutors or felt that his testimony would lead the trial court in his case to be lenient with him.

regarding Kingsbury's criminal record would need to come in under Rule 609. Thus, defendant did not assert his Rule 404(b) and 608(c) arguments before the trial court and cannot raise them for the first time on appeal. *See State v. Webb*, 790 P.2d 65, 71 n. 2 (Utah App.1990) *cert. denied*, 860 P.2d 943 (Utah 1993).[8] Therefore, we limit our review of the admissibility of evidence regarding Kingsbury's criminal record to admissibility under Rule 609.

Rule 609 of the Utah Rules of Evidence states that for the purpose of attacking credibility, evidence of a witness's prior criminal conviction shall be admitted if (1) the crime was "punishable by death or imprisonment in excess of one year," Utah R.Evid. 609(a)(1), or (2) if the crime involved "dishonesty or false statement," Utah R.Evid. 609(a)(2). Therefore, Kingsbury's prior criminal record would be admissible under Rule 609 only regarding convictions of a felony or other crime involving dishonesty or false statement.

As conceded by defendant at oral argument, Kingsbury's unredacted rap sheet does not include *any* convictions which meet the criteria of Rule 609. Therefore, the trial court acted properly in not admitting the evidence and in refusing to allow defense counsel to cross-examine Kingsbury about his criminal convictions.[9]

### Defective Jury Instruction

■ Defendant asserts that the trial court's rape instruction was defective because it did not list as an essential element the nonmarriage of the accused and the victim.

In *State v. Jones*, 823 P.2d 1059 (Utah 1991), the Utah Supreme Court held that "The complete absence of an elements instruction on a crime charged is an error we review to avoid manifest injustice." *Id.* at 1061. Thus, even though defendant did not object at trial, the court overturned the conviction for aggravated kidnapping because the trial court gave an information instruction rather than an elements instruction. *Id.*[10]

In this case, the rape instruction given to the jury did not set forth the element of nonmarriage. Although no longer a part of the present rape statute, the applicable statute at the time of trial did not permit a conviction of rape where a married couple was involved. *See* Utah Code Ann. § 76-5-402 (1990); *State v. Calamity*, 735 P.2d 39, 42 (Utah 1987) (stating that nonmarriage was an essential element of the crime of rape). However, defendant did not object to the instruction at trial. Further, the nonmarriage element of rape was never an issue at trial. In fact, all testimony at trial clearly and indisputably established that defendant and Southworth were not married.[11] Therefore, although the rape instruction should have contained the element of nonmarriage, its absence did not prejudice defendant in this case. This case is distinguishable from *Jones* in that the trial court in *Jones* failed to give the entire elements instruction. In this case, the trial court left out an element that was not at issue. The "manifest injustice," while obvious in *Jones*, is not present here.

Further, although the trial court did not adopt it verbatim, defendant's proposed rape instruction did not contain the element of nonmarriage. Thus, even if the jury instruc-

---

8. Likewise, defendant has not argued on appeal that plain error or exceptional circumstances exist regarding these issues thus precluding our consideration. *State v. Sepulveda*, 842 P.2d 913, 918 (Utah App.1992).

9. Defendant also argues error below because he did not receive from the prosecutor a "clean copy" of Kingsbury's criminal record setting forth his expunged convictions. If error did occur it was cured by providing the unredacted rap sheet during the course of this appeal and/or was harmless as it contained no admissible evidence. *But see State v. Jones*, 581 P.2d 141, 142 (Utah

1978) (under repealed statute, expunged convictions may not be used to impeach witness).

10. The trial court's information instruction gave the statutory definition of the crime, but failed to set forth each element the prosecution had to prove for a conviction. *Jones*, 823 P.2d at 1061.

11. Defendant testified that Southworth probably claimed he had raped her because he had told her he was leaving Utah and that they would not be married. Southworth testified that she had never met defendant before the night of the incident.

tion contained error, such an error was "invited error." *State v. Parsons,* 781 P.2d 1275, 1285 (Utah 1989). We refuse to reverse a conviction based upon invited error in order to avoid permitting defendant to invite error and then "implant it in the record as a form of appellate insurance against an adverse sentence." *Id.*

## CONCLUSION

Although the prosecutor in this case made improper remarks, those remarks did not prejudice defendant. Further, evidence of a State witness's prior convictions was not admissible under applicable rules asserted by defendant at trial. Finally, although the rape instruction given to the jury did not contain the element of nonmarriage, the omission was not prejudicial and, if error, was invited error by defendant. We therefore affirm defendant's conviction of rape.

BILLINGS and JACKSON, JJ., concur.