2011 UT App 38

**STATE of Utah, Plaintiff and Appellee,**

v.

**Justin Michael SELLERS, Defendant and Appellant.**

No. 20090196–CA.

Court of Appeals of Utah.

Feb. 3, 2011.

Lori J. Seppi, Salt Lake City, for Appellant.

Mark L. Shurtleff and Jeanne B. Inouye, Salt Lake City, for Appellee.

Before Judges DAVIS, THORNE, and ROTH.

## OPINION

ROTH, Judge:

¶ 1 Justin Michael Sellers challenges his conviction for aggravated sexual abuse of a child by raising five errors committed by the trial court and trial counsel. Because his claim of error in the voluntary intoxication jury instruction is well taken, we reverse and remand for a new trial.

## BACKGROUND [1]

¶ 2 Sellers, an adult male, is a close friend of the thirteen-year-old complaining witness (Child) and her family. Although Sellers is not related to Child's family, he has periodically lived with them since he was fifteen and he has known Child since she was three. Child's mother (Mother) testified that she considered Sellers to be a son and that Sellers treated Child like a sister. Sellers was not living in Child's home on the night in question, but he regularly spent the night at her house, particularly after he had been drinking heavily. When he stayed over, Sellers slept in the living room, in Child's brother's room, or, most often, in Child's room. Although Mother and Sellers both reported [2]

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict." *State v. Jeffs,* 2010 UT 49, ¶ 3, 243 P.3d 1250 (internal quotation marks omitted).

2. Sellers did not testify at trial. His statements were made during an interview with Detective

that Child was generally not home when Sellers slept in her room, Child testified that Sellers slept in her bed with her "[s]o many times [she couldn't] ... keep track" but that Sellers had never before made any sexual advances towards her.

¶3 On May 29, 2007, Sellers attended a party at Child's home. Sellers became intoxicated and passed out in the street between 9:30 and 10:00 p.m. Mother and her husband managed to wake Sellers to bring him inside, and Mother told Sellers to sleep in her son's room. Sellers then passed out again so they left him on the floor outside of Mother's room. An hour or so later, as the family prepared to go to bed, Sellers regained consciousness. Mother again told Sellers, " 'You need to go to [my son]'s bed and pass out. You need to stay out of [Child]'s room.' " When everyone went to bed between 11:00 p.m. and 12:30 a.m., Sellers was asleep in the living room chair.

¶4 Sometime during the night, Sellers woke up, discovered he had urinated in his clothing, and took his pants off to dry them.[3] After he had put his pants back on, he went to Child's room and got into her bed. At 5:00 a.m., Child awoke to find Sellers's hand down her pants inside her underwear and his finger in her vagina. Child slapped Sellers across the face, but he barely moved. Child took a shower, got ready for school, and waited in the living room until Mother awoke. She immediately told Mother what had happened. After Mother drove Child to school and went to work, she called the house and confronted Sellers with Child's accusations. Sellers said nothing and hung up the phone. When Mother subsequently searched Child's room, she found a pint of vodka, which was one-quarter to one-half empty, hidden behind the night stand. No one remembered seeing Sellers drinking from the

bottle at the party. A few days later, Child and Mother reported the incident to the police. As a result, Sellers was charged with aggravated sexual abuse of a child, a first degree felony, see Utah Code Ann. § 76-5-404.1(4)–(5) (2008).[4]

¶5 To convict Sellers for aggravated sexual abuse of a child under the circumstances of this case, the State was required to prove that Sellers intentionally, knowingly, or recklessly touched the anus, buttocks, breast, or genitalia of Child, who was under the age of fourteen; that the touching involved the penetration, however slight, of Child's genital opening by any body part other than Sellers's genitals or mouth; and that he did so "with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person." See id. § 76-5-404.1(1)–(2), (4)(j). The offense involves proof of two intent elements: a general intent to touch and a specific intent to cause pain or to arouse or gratify sexual desires. See generally id.; Adams v. State, 2005 UT 62, ¶21, 123 P.3d 400 (identifying the same two intent elements for the similar offense of forcible sexual abuse, which involves a victim over the age of fourteen). Sellers requested and received an instruction on the affirmative defense of voluntary intoxication as applied to the specific intent element. The instruction, however, failed to inform the jury that the State had the burden of disproving the voluntary intoxication defense beyond a reasonable doubt. Following deliberations, the jury convicted Sellers. Sellers now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶6 On appeal, Sellers alleges five errors that he asserts individually and cumulatively warrant reversal of his conviction. First,

---

Janet Bell–Morley, a family crimes investigator who was assigned to the case, and came into evidence through Detective Bell–Morley's testimony.

**3.** No one saw Sellers without his pants during the night. Sellers reported to Detective Bell–Morley that he awoke to find his pants wet and that he removed them to dry them. Mother corroborated the story; she found Sellers's wal-

let in the laundry room after Sellers's fiancée called to ask whether he had left his wallet there and suggested he may have left it in the laundry room while he was drying his pants.

**4.** We cite to the current version of the code as a convenience to the reader because the relevant language has not changed since the incident occurred on May 30, 2007, see Utah Code Ann. § 76-5-404.1(4)–(5) & amend. notes (2008).

Sellers contends that the trial court failed to properly instruct the jury that the State bore the burden of disproving the affirmative defense of voluntary intoxication. Next, Sellers claims that the trial court admitted Detective Bell–Morley's opinion testimony about his level of inebriation in violation of rule 704 of the Utah Rules of Evidence because the testimony told the jury what outcome it should reach with regard to his intoxication defense. Sellers's third contention is that Detective Bell–Morley's testimony amounted to inadmissible expert testimony. His fourth argument is that Detective Bell–Morley improperly testified about Sellers's statements regarding Child's veracity. Finally, Sellers asserts that prior bad acts evidence was admitted despite the parties' stipulation to exclude such evidence.

¶ 7 Sellers failed to object to any of these claimed errors in the trial court, and therefore, his claims are not preserved for appeal. Sellers concedes as much but argues that he should nevertheless be heard on appeal because the omission of the burden of proof language from the voluntary intoxication instruction created a manifest injustice and the next three errors amounted to plain error. He also raises related ineffective assistance of counsel claims as to all five claimed errors. *See generally State v. Lee*, 2006 UT 5, ¶ 24, 128 P.3d 1179 (permitting appellate review of unpreserved claims for plain error, exceptional circumstances, and ineffective assistance of counsel).

¶ 8 When a defendant asserts an unpreserved jury instruction error on appeal on the basis that failure to review it would result in manifest injustice, we apply the same standard as we do for plain error review. *See State v. Verde*, 770 P.2d 116, 122 (Utah 1989). "To prevail under plain error review, a defendant must demonstrate that [1] an error exists; [2] the error should have been obvious to the trial court; and [3] the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Low*, 2008 UT 58, ¶ 20, 192 P.3d 867 (alterations in original) (internal quotation marks omitted).

¶ 9 We consider ineffective assistance of counsel claims raised for the first time on appeal as a matter of law. *See State v. Tennyson*, 850 P.2d 461, 466 (Utah Ct.App. 1993). The burden rests on the defendant to demonstrate deficiency in counsel's performance and prejudice to the degree that "but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different," *Lee*, 2006 UT 5, ¶ 37, 128 P.3d 1179 (internal quotation marks omitted); *accord Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (observing that "a reasonable probability is a probability sufficient to undermine confidence in the outcome"), or stated in other words, the errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *accord State v. Archuleta*, 747 P.2d 1019, 1023 (Utah 1987).

## ANALYSIS

### I. The Voluntary Intoxication Instruction

¶ 10 Sellers's first contention on appeal is that the trial court did not properly instruct the jury regarding the burden of proof associated with the affirmative defense of voluntary intoxication and that his trial counsel was ineffective because he failed to object. The contested intoxication instruction stated,

Voluntary intoxication is not a defense to a criminal charge unless such intoxication negates the existence of any mental state which is an element of the offense. Being voluntarily under the influence of alcohol or drugs is not a defense to the commission of a crime where it merely makes a person more excited or reckless so that he does something that he might not otherwise have done. Rather, to be a defense to a crime, one must be so under the influence of alcohol or drugs that at the time of the alleged offense he was then and there incapable of forming the intent or having the knowledge which is an element of that crime.

In this case, you are instructed that you may only consider the defense of voluntary intoxication with regard to whether the defendant acted with the intent to cause substantial emotional or bodily pain to any

person or with the intent to arouse or gratify the sexual desire of any person. Sellers complains that the instruction does not " 'clearly' instruct the jury that the State had to disprove the defense 'beyond a reasonable doubt' " but instead "left the jurors free to infer 'that the burden of proof was on either party.' " (Quoting *State v. Garcia*, 2001 UT App 19, ¶ 16, 18 P.3d 1123.)

### A. Manifest Injustice/Plain Error

■ ¶ 11 Sellers's attorney neither proposed an instruction that properly informed the jury about the State's burden to disprove the affirmative defense nor objected to the instruction the court gave. "Unless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." Utah R.Crim. P. 19(e). On appeal, Sellers asserts that the manifest injustice standard has been met because the trial court committed an obvious error in failing to appropriately place the burden of proof on the State, and there was a reasonable likelihood that had the error not been made, a more favorable outcome would have occurred. *See generally Verde*, 770 P.2d at 122 (applying the plain error standard to an unpreserved claim of instructional error).

■ ¶ 12 A defendant, however, "cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *State v. Geukgeuzian*, 2004 UT 16, ¶ 9, 86 P.3d 742 (internal quotation marks omitted); *see also id.* ("[A] jury instruction may not be assigned as error even if such instruction constitutes manifest injustice 'if counsel, either by statement or act, affirmatively represented to the [trial] court that he or she had no objection to the jury instruction.' " (quoting *State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111)). Prior to trial, the State and the defense both pro-

posed instructions regarding voluntary intoxication as a defense. They disagreed about which intent elements voluntary intoxication could defend against, i.e., general and specific or specific only, and each side's proposed instruction supported its theory. Neither party's instruction, however, addressed who had the burden of proof. The trial court ultimately agreed with the State that the voluntary intoxication defense applied only to the specific intent element, and the instruction the court gave was an elaboration on the State's proposed instruction. Defense counsel subsequently assented to the instruction the court gave. When the court specifically asked if there was "[a]nything else, [counsel], that you want to put on the record in terms of [the voluntary intoxication instruction]," defense counsel responded, "No. That's fine." [5] Because Sellers invited the error, we do not review for manifest injustice. *See generally Geukgeuzian*, 2004 UT 16, ¶ 12, 86 P.3d 742 (stating that the error was invited where the defendant's proposed instruction contained the same error as the instruction adopted by the trial court because by submitting the instruction, the defendant "affirmatively purported to list all 'essential elements' "); *State v. Anderson*, 929 P.2d 1107, 1108–09 (Utah 1996) (determining instructional error was invited where defense counsel failed to object even when specifically asked).

¶ 13 Invited error does not, however, preclude our review of a claim of ineffective assistance of counsel. *See generally Geukgeuzian*, 2004 UT 16, ¶¶ 1, 13, 86 P.3d 742 (remanding for consideration of ineffective assistance of counsel claim after reversing the court of appeals' determination that "the trial court's failure to include a mens rea element in its jury instruction resulted in manifest injustice" because the instructional

---

5. Sellers argues on appeal that he did not invite the error because his assent was not a withdrawal of his previous objection but a recognition of the court's decision. He cites to further colloquy between counsel and the court in which the court acknowledged that counsel had previously made an objection to the jury instruction as proof that his objection had been preserved. Sellers's earlier objection, however, was to the application of the defense to only the specific

intent element, not to the burden of proof. Thus, even accepting Sellers's position, we still find the error was invited because Sellers's proposed instruction contained the same error and he affirmatively represented that he had no other objections to the instructions when the court inquired. *See State v. Geukgeuzian*, 2004 UT 16, ¶ 12, 86 P.3d 742; *State v. Anderson*, 929 P.2d 1107, 1108–09 (Utah 1996).

error had been invited); *State v. Geukgeuzian,* 2005 UT App 228U, 2005 WL 1243779 (mem.) (considering ineffective assistance claim on remand).

## B. Ineffective Assistance of Counsel

¶ 14 " 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *State v. Tennyson,* 850 P.2d 461, 465 (Utah Ct.App.1993) (quoting *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Thus, "[t]o prove that his attorney rendered ineffective assistance, [Sellers] must demonstrate [both] that (1) counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *See State v. Lee,* 2006 UT 5, ¶ 37, 128 P.3d 1179 (internal quotation marks omitted); *accord Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. In order to determine whether Sellers's counsel was ineffective, we first examine the state of Utah's law regarding affirmative defenses.

¶ 15 Utah has "long-standing law ... concerning the procedural principles that govern when and how the issue of [an affirmative defense] is properly raised and the allocation of the burden of persuasion with respect to that issue." *State v. Knoll,* 712 P.2d 211, 214 (Utah 1985). Our cases establish that in asserting an affirmative defense, the " 'defendant's burden of proof is quite limited. He need not [even] prove the defense ... by a mere preponderance.' " *State v. Garcia,* 2001 UT App 19, ¶ 8, 18 P.3d 1123 (alteration and omission in original) (emphasis omitted) (quoting *State v. Moritzsky,* 771 P.2d 688, 691 n. 2 (Utah Ct.App.1989)). Rather, a defendant is entitled to an affirmative defense instruction so long as there is a reasonable basis in the evidence for such a defense. *See State v. Low,* 2008 UT 58, ¶ 25, 192 P.3d 867. Once that initial showing is made, the burden shifts to the state to prove to the jury, beyond a reasonable doubt, that

the defense lacks merit. *See* Utah Code Ann. § 76–1–502(2)(b) (2008) (requiring the state to offer evidence that disproves an affirmative defense beyond a reasonable doubt); *see also Knoll,* 712 P.2d at 214 (observing that the state's burden to disprove an affirmative defense arises from the constitutional requirement that the state prove all elements of a criminal act beyond a reasonable doubt). If the state fails to meet this burden, a defendant is entitled to an acquittal. *See State v. Torres,* 619 P.2d 694, 695 (Utah 1980). The state's responsibility " 'should [therefore be] made plain to the jury' " in the instructions. *Garcia,* 2001 UT App 19, ¶ 14, 18 P.3d 1123 (quoting *Knoll,* 712 P.2d at 214) (additional quotation marks omitted). To achieve that goal, "[t]rial courts should separately instruct each jury clearly that the State must disprove ... [an] affirmative defense[ ] beyond a reasonable doubt." *Id.* ¶ 16. With this in mind, we turn to the deficient performance prong of the ineffective assistance of counsel claim.

### 1. Deficient Performance

¶ 16 To demonstrate deficient performance, Sellers "must identify specific acts or omissions demonstrating that counsel's representation failed to meet an objective standard of reasonableness." *See State v. Montoya,* 2004 UT 5, ¶ 24, 84 P.3d 1183 (internal quotation marks omitted). In reviewing counsel's performance under this prong, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (internal quotation marks omitted); *accord Tennyson,* 850 P.2d at 465, 468. Sellers argues that his trial counsel's failure to object to the voluntary intoxication instruction as given amounted to deficient performance because the instruction did not clearly tell the jury that the burden rested on the State to disprove his affirmative defense beyond a reasonable doubt and there was no legitimate tactical explanation for omitting the burden of proof.

¶ 17 The legislature has identified voluntary intoxication as an affirmative defense, *see* Utah Code Ann. §§ 76–2–306, –308,[6] that is available where "such intoxication negates the existence of the mental state which is an element of the offense," *id.* § 76–2–306. At trial, the parties and the court agreed that Sellers had presented sufficient evidence to warrant a voluntary intoxication instruction. It was therefore his trial counsel's responsibility to ensure that it be "made plain to the jury" that Sellers did not bear any further burden of proof on the matter and that, rather, the State alone had the responsibility to disprove his defense beyond a reasonable doubt. *See Garcia*, 2001 UT App 19, ¶ 14, 18 P.3d 1123 (internal quotation marks omitted); *see also* Utah Code Ann. § 76–1–502(2)(b) (requiring the state to disprove an affirmative defense). Given the nature of the defense itself, as explained in the instruction given by the trial court, it would be natural for the jury to assume that the burden of proving voluntary intoxication lay with the defendant because he had raised it. Under the circumstances, counsel's failure to request an instruction that provided a clear explanation that the burden actually shifted to the State to *disprove* the defense—and to do so by the highest standard of proof-cannot be attributed to any reasonable trial strategy. *See generally Moritzsky*, 771 P.2d at 692 (refusing to attribute defense counsel's failure to object to a defense of habitation instruction that lacked a presumption of reasonableness to legitimate tactic or professional judgment). We therefore agree with Sellers that his trial counsel's performance was deficient in this regard.

### 2. Prejudice

██ ¶ 18 With respect to the prejudice prong, we must determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. "[C]onfidence in the outcome may be undermined at some point substantially short of the 'more probable than not' portion of the spectrum." *State v. Knight*, 734 P.2d 913, 920 (Utah 1987); *see also State v. Blake*, 2002 UT 113, ¶ 20, 63 P.3d 56 (observing that reasonable probability "lies somewhere between 'mere possibility' and 'more likely than not' " (citing *Knight*, 734 P.2d at 920)).

¶ 19 The State acknowledges that the voluntary intoxication instruction did not expressly state which party had the burden of proof, but it asserts that the instructions as a whole adequately informed the jury that the State had to prove each of the elements, including that Sellers had the specific intent to cause pain or to arouse or gratify sexual desires, beyond a reasonable doubt. We agree with the State that as a general proposition, jury instructions should be considered as a whole when reviewing their adequacy, *see Garcia*, 2001 UT App 19, ¶ 13, 18 P.3d 1123. Our appellate courts, however, have recognized that the burden of proof for an affirmative defense must be made plain to the jury because the burden intuitively may appear to be the defendant's rather than the State's. *See Knoll*, 712 P.2d at 214; *Torres*, 619 P.2d at 695; *Garcia*, 2001 UT App 19, ¶ 14, 18 P.3d 1123.

> While the written jury instructions [may] generally inform[ ] the jury correctly of the general burden of proof and of who carried it, ... the burden of proof required for affirmative defenses is counter-intuitive. The State is required in this instance to disprove the affirmative [defense] ..., not just prove guilt, beyond a reasonable doubt. This counter-intuitive nature of thinking about ... affirmative defenses produces the need for special jury instructions.

*Garcia*, 2001 UT App 19, ¶ 16, 18 P.3d 1123. "Because the jury instructions [here] did not adequately address the burden of proof with [voluntary intoxication], the jury could have inferred that the burden of proof ... was on [Sellers] or that it required something less than [disproving voluntary intoxication] be-

---

6. Affirmative defenses are defined by statute to include lack of intent due to age; self-defense; entrapment; ignorance of law or fact, with some exceptions; lack of mental capacity; voluntary intoxication; and withdrawal. *See* Utah Code Ann. §§ 76–2–301 to –307 (2008).

yond a reasonable doubt." *See id.* ¶ 19 (omission in original) (internal quotation marks omitted). Although "[w]e cannot say the jury did take this inference," the possibility, in light of the voluntary intoxication evidence presented, is too great for us to have confidence in the verdict. *See id.* (internal quotation marks omitted). Under our precedent, that lack of confidence equates to a reasonable probability that Sellers would have received a more favorable outcome had his counsel not performed deficiently. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Sellers has thus demonstrated that his counsel was ineffective, and as a result, his conviction should be reversed and the matter remanded for a new trial.

### C.  Alternate Basis of Harmless Error

¶ 20 The State, however, argues as an alternate basis for affirming the conviction that Sellers was not entitled to a voluntary intoxication instruction in the first place and therefore suffered no prejudice from any error in the instruction given. It is important to note that the parties agreed in the trial court that Sellers was entitled to the instruction and that there was a sufficient basis in the evidence for the trial court to accept that agreement.

¶ 21 In Utah, a defendant is entitled to an instruction on voluntary intoxication as an affirmative defense "if there is a reasonable basis in the evidence to justify giving the requested instruction." *State v. Padilla*, 776 P.2d 1329, 1332 (Utah 1989); *see also State v. Low*, 2008 UT 58, ¶ 25, 192 P.3d 867 (stating that a reasonable basis can be found from evidence presented by either the prosecution or the defense); *State v. Garcia*, 2001 UT App 19, ¶ 8, 18 P.3d 1123 ("[D]efendant's burden of proof [in asserting an affirmative defense] is quite limited. He need not [even] prove the defense ... by a mere preponderance." (second alteration and omission in original) (emphasis omitted) (internal quotation marks omitted)). At trial, evidence was adduced that Sellers was sufficiently intoxicated to have repeatedly passed out during the night in question; that a partially empty pint of vodka was found in Child's room (though no one had seen Sellers drink from the bottle at the party), suggesting that Sellers consumed more alcohol after he regained consciousness; and that Child reported that Sellers barely moved when she slapped him. The fact that other evidence tended to negate the voluntary intoxication defense, namely, that Sellers remembered several of the events that occurred that evening and was able to complete the task of drying his pants before getting into Child's bed, does not render the defense inapplicable once the minimal showing required to justify the instruction has been made; rather that decision is for the jury. Because Sellers has set forth a reasonable basis for receiving a voluntary intoxication instruction and the parties agreed in the trial court to give the instruction, we decline to affirm on the alternate basis that Sellers was not entitled to the instruction.

¶ 22 We therefore reverse Sellers's conviction and remand for a new trial based on the erroneous voluntary intoxication instruction.[7]

### II.  Evidentiary Issues

¶ 23 Our decision to reverse and remand for retrial renders the remaining issues on appeal moot. Nevertheless, we have discretion to address the issues that are likely to recur during the new trial to guide the trial court on remand. *See Low*, 2008 UT 58, ¶ 61, 192 P.3d 867. The fact that no trial court has yet considered these issues, however, gives us pause for the reason that courts of appeal are not the place where evidentiary rulings ought to be made in the first instance. Because the issues are likely to arise again on remand and the parties have made the effort to brief and argue the issues, however, we have had occasion to consider them in some depth. We therefore provide the following analysis to the extent it may be helpful to the parties and the court as the case proceeds. *See id.* (considering issues that were thoroughly briefed on appeal and

---

7. On remand, the parties may find the latest version of the Model Utah Jury Instructions to be a useful starting point for drafting an appropriate instruction on voluntary intoxication, *see* Model Utah Jury Instructions CR503 (2d ed. 2007), http://www.utcourts.gov/resources/muji.

likely to recur at retrial, despite the state's claims that the issues were not preserved and any errors were harmless, because once an appellate court makes the decision to remand, it is concerned with "providing guidance for retrial, rather than ... determining whether the district court erred in the previous trial"). In doing so, we recognize that the trial court is in the best position to make initial judgments about the admissibility of evidence within the context of a trial and emphasize that our analysis is meant to aid in such decision making and not to control it.

## A. Rule 704 Opinion Testimony and Rule 702 Expert Testimony

¶ 24 Sellers asserts two errors with respect to Detective Bell–Morley's testimony on Sellers's state of intoxication at the time of the alleged sexual abuse: (1) her testimony constituted unqualified, undisclosed expert opinion testimony in violation of Utah Rule of Evidence 702, and (2) her testimony violated Utah Rule of Evidence 704 because it "t[old] the jury what result to reach," *see State v. Davis*, 2007 UT App 13, ¶ 15, 155 P.3d 909 (internal quotation marks omitted). Specifically, Sellers challenges the dialogue between the State and Detective Bell–Morley regarding her interrogation technique for judging a suspect's level of intoxication, in which the detective also offered her opinion about Sellers's degree of intoxication at the time of the relevant events. The pertinent exchange follows:

> [STATE:] Some of the statements that you[ ] made [during the interrogation] seem to indicate that you thought he may have still been drunk [at the time of the incident]. Can you explain to the jury what those questions are intended to do?
>
> [DETECTIVE BELL–MORLEY:] I ask those questions a lot just to get a feel of how drunk they were, what they really remember or if they are using that as an excuse for not remembering. They are very common questions that I use when I talk to them.

> [STATE:] In your mind did you believe that [Sellers] was still drunk in the morning?
>
> [DETECTIVE BELL–MORLEY:] No. I believe he knew what he was doing by that time. He—the feeling I got was he wasn't that—he knew what he was doing by then. He wasn't still passed out.
>
> [STATE:] I guess what I am getting at is your statements that you've made to him in saying[, "Y]ou weren't still drunk by [5 or] 6 in the morning, you know, you were probably still drunk that next morning,["] those statements that you made, were those an interrogation technique?
>
> [DETECTIVE BELL–MORLEY:] Yes, they are.

Trial counsel did not object to this testimony, and Sellers therefore asks us to consider the issues on plain error and ineffective assistance grounds. Because we are addressing the issues in anticipation of a new trial, we do not consider whether the admission of the testimony actually rose to the level of plain error or ineffective assistance. We do, however, agree with Sellers that Detective Bell–Morley's testimony that she believed Sellers was no longer intoxicated at the time of the incident was improper and that any State examination aimed at clarifying the detective's interrogation techniques should be commensurately limited on remand.

## 1. Detective Bell–Morley's Testimony Did Not Constitute Inadmissible Expert Testimony.

¶ 25 It is undisputed that Detective Bell–Morley was not called as an expert witness but instead was presented only to offer lay testimony regarding her investigation.[8] In the course of direct examination, the prosecutor asked the series of questions set forth above in an effort to dispel any impression arising from the detective's interview with Sellers that she actually "believe[d] that [Sellers] was still drunk in the morning" of the alleged sexual abuse. Detective Bell–Morley responded by offering her opinion

8. Sellers's brief hints at a claim that Detective Bell–Morley's testimony entered the realm of expert testimony when she stated that she relied upon an interrogation technique to form an opinion about Sellers's level of intoxication. Because the issue is not fully briefed, we do not consider it in the first instance.

that Sellers was not intoxicated and that he "knew what he was doing by that time."

¶ 26 A lay witness may testify in the form of fact or opinion to information within her personal knowledge or perception when it is helpful to the finder of fact and it is "not based on scientific, technical, or other specialized knowledge." Utah R. Evid. 701;[9] *see State v. Rothlisberger,* 2006 UT 49, ¶ 9, 147 P.3d 1176. In other words, if "an average bystander would be able to provide the same [type of] testimony," an expert is not required. *Rothlisberger,* 2006 UT 49, ¶ 34, 147 P.3d 1176. An opinion about whether a person is intoxicated does not require either specialized or scientific knowledge but is considered a matter subject to lay judgment. *See State v. Perkins,* 2009 UT App 390, ¶ 14, 222 P.3d 1198 (observing that "members of the general public have a common knowledge about whether a person is under the influence of alcohol" to report drunk driving (internal quotation marks omitted)). Detective Bell–Morley's testimony regarding Sellers's state of intoxication therefore could properly come in under rule 701 as lay opinion testimony so long as it was helpful to the jury and based on her own perceptions.

### 2. Detective Bell–Morley's Opinion Testimony Regarding Sellers's State of Intoxication Was Not Based on Personal Observation and Therefore Was Improper Lay Testimony.

¶ 27 Under rule 701 of the Utah Rules of Evidence, a lay witness may give opinions "rationally based on the perception of the witness." Utah R. Evid. 701. Detective Bell–Morley interviewed Sellers on June 12, 2007, nearly two weeks after the incident occurred. Thus, Detective Bell–Morley knew of Sellers's behavior on the night in question only through Sellers's own report and the observations of Child and Mother culled from police reports and interviews. This court has acknowledged that a lay person is capable of recognizing intoxication in cases where the person personally observed the behaviors that led her to that conclusion. *See, e.g., Perkins,* 2009 UT App 390, ¶¶ 3, 14, 222 P.3d 1198; *State v. Van Dyke,* 2009 UT App 369, ¶¶ 3, 24, 223 P.3d 465, *cert. denied,* 230 P.3d 127 (Utah 2010); *Salt Lake City v. Bench,* 2008 UT App 30, ¶ 20, 177 P.3d 655; *see also State v. Rothlisberger,* 2004 UT App 226, ¶¶ 11–12, 95 P.3d 1193 (equating "rationally based on the perception of the witness" with personal observation), *aff'd,* 2006 UT 49, 147 P.3d 1176. Because Detective Bell–Morley's testimony about Sellers's level of intoxication is not based on her own personal observation of him on either the night of May 29 or the morning of May 30, it exceeds the scope of permissible lay opinion testimony under rule 701.

### B. Sellers's Interrogation Statements Regarding Child's Veracity

¶ 28 Sellers also challenges Detective Bell–Morley's testimony about statements Sellers made in the pretrial investigatory interview regarding Child's veracity. Sellers's complaint concerns the following exchange between the State and Detective Bell–Morley:

[STATE:] Did you ask [Sellers] if he thought that [Child] was lying?

[DETECTIVE BELL–MORLEY:] Yes, I did.

[STATE:] And do you recall what his response was?

[DETECTIVE BELL–MORLEY:] He sa[id], "I don't know why she would lie."

[STATE:] Did he specifically say he thought she was lying?

[DETECTIVE BELL–MORLEY:] No, he didn't.

¶ 29 To support his contention that such testimony is inappropriate, Sellers cites to two cases, *State v. Emmett,* 839 P.2d 781 (Utah 1992), and *State v. Stevenson,* 884 P.2d 1287 (Utah Ct.App.1994), in which the appellate courts held that a prosecutor's request,

---

9. Rule 701 was amended in 2009 to include the "not based on scientific, technical, or other specialized knowledge" language. *See* Utah R. Evid. 701 history. Although we acknowledge that Sellers was tried in 2008, before the amendment took effect, the advisory committee's note states, "This amendment is not intended to change the law, but reflects the Utah Supreme Court's holding in *State v. Rothlisberger,* 2006 UT 49, [¶¶] 23–24, 147 P.3d 1176," Utah R. Evid. 701 advisory comm. notes. Thus, this is the law that was in effect at the time of trial.

during cross-examination of the defendant at trial, that the defendant comment on the truthfulness of another witness's statements made during the state's case-in-chief was inappropriate. *See Emmett*, 839 P.2d at 787 (stating that questioning a defendant about the complaining witness's veracity "is improper because it is argumentative and seeks information beyond the witness's competence" and because "it puts the defendant in the untenable position of commenting on the character and motivations of another witness who may appear sympathetic to the jury"); *see also Stevenson*, 884 P.2d at 1291 (recognizing that the prosecutor's request for the defendant to comment on the truthfulness of a state witness was improper but declining to reverse where the question did not prejudice the defendant). Although Sellers acknowledges that neither *Emmett* nor *Stevenson* involved the situation here—the admissibility of questions put to a suspect by a police officer (and the answers to those questions) in the course of an investigatory interrogation—he contends that the cases are sufficiently analogous to warrant application of the same rationale here.[10] We are not persuaded.

¶ 30 Detective Bell–Morley's questioning is a common and legitimate interrogation technique, aimed at challenging a suspect's version of events with a request to explain why a complaining witness, with no obvious reason to lie, is telling a different story. It can be a useful method of disconcerting the suspect into making a change in his story, an admission, or a telling inconsistency. Such an approach may also reveal information that actually does call into question the other witness's veracity. Confrontation of this sort can therefore be an effective investigative tool. *See, e.g., State v. Lopez*, 95 Wash.App. 842, 980 P.2d 224, 231 (1999) (obtaining a confession from the defendant in response to a question about whether his children would make up allegations of sexual abuse).

¶ 31 The rules that govern the form of examination at trial do not apply to investigative questioning that occurs outside of the courtroom and not under oath. If they did, the process of investigation would be unnec-essarily constrained and impeded. Therefore, a segment of a defendant's interrogation is not inadmissible simply because the questions asked by the investigator would not have been permitted if asked by counsel at trial. Rather, the admissibility of verbatim segments of an interrogation or of information gleaned from such questioning must be decided by applying particular rules of evidence to the substance of what a party seeks to have admitted and why, as would be the case with any out-of-court conversation that becomes the subject of testimony at trial. Thus, whether Sellers's statements about Child's veracity are admissible must be resolved by the trial court. In so doing, the trial court must take into consideration the State's asserted purpose for admitting the dialogue and Sellers's objections to its admission in light of the pertinent Utah Rules of Evidence, and not simply apply trial standards to the form of the question used in the interrogation.

¶ 32 In their appellate briefs, the parties focused on whether the testimony amounted to prosecutorial misconduct under prior case law rather than addressing the application of specific rules of evidence. Sellers argued that his statements were inadmissible because they amounted to an inappropriate comment on Child's veracity, and the State countered that the statements were in response to investigative questions that could not be judged as if they were asked at trial. If, as Sellers contends, the sole purpose or effect of this evidence was to bolster Child's credibility, it would likely be inadmissible under rule 608(a) of the Utah Rules of Evidence, which limits evidence about the credibility of a witness to reputation or opinion, and then only permits such evidence when the witness's credibility has been called into question, *see* Utah R. Evid. 608(a). But because the statements also address any implication that Child had a bias against Sellers or some other reason to fabricate such an accusation or may also be related to Sellers's state of mind near the time of the events, the evidence may arguably have some relevance other than mere bolstering. *See generally id.* R. 608(c) (allowing evidence of bias, preju-

---

**10.** The State concedes that there is no Utah case law directly on point.

dice, or motive to misrepresent to impeach a witness); *id.* R. 803 (excluding out-of-court statements by the defendant about his state of mind from the definition of hearsay). These examples are no more than hypothetical, however, and we emphasize that the parties themselves must address the relevance, as well as any potential prejudicial effect, of the out-of-court dialogue in the context of the circumstances at trial. And it is for the trial court to ultimately decide whether this evidence ought to be admitted or excluded at retrial, taking into account applicable evidentiary rules, such as rules 403 and 608.[11] We do not attempt to do so here.

## CONCLUSION

¶ 33 We reverse and remand for a new trial on the basis that the voluntary intoxication instruction failed to inform the jury that the State had to disprove Sellers's affirmative defense beyond a reasonable doubt. During retrial, the State should refrain from eliciting lay testimony from Detective Bell–Morley regarding her personal opinion on Sellers's state of intoxication at the time of the incident. With respect to Sellers's statements during the pretrial investigatory interrogation about Child's truthfulness, the trial court must decide whether, under applicable evidentiary rules, this evidence ought to be admitted or excluded at retrial.

¶ 34 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and WILLIAM A. THORNE JR., Judge.

---

11. We mention rules 403 and 608 because they address issues that we can readily foresee arising at retrial. But our suggestion that rules 403 and 608 may apply is intended neither to limit the parties' use of the testimony or the types of objections they may make nor to preclude the trial court from considering the admissibility of this testimony under other rules that may be applicable.